## FULHAM v. COMMISSIONER OF INTERNAL REVENUE.

### No. 3531.

Circuit Court of Appeals, First Circuit.
April 10, 1940.

Samuel S. Dennis, 3d, of Boston, Mass. (George H. B. Green and Hale & Dorr, all of Boston, Mass., on the brief), for petitioner for review.

Warren F. Wattles, of Washington, D. C. (Samuel O. Clark, Jr., Sewall Key, and Helen R. Carloss, all of Washington, D. C., on the brief), for Commissioner.

Before MAGRUDER and MAHONEY, Circuit Judges, and PETERS, District Judge.

MAGRUDER, Circuit Judge.

Petitioner was the grantor of a trust. The Commissioner of Internal Revenue concluded that the income of the trust was taxable to the grantor, under Section 166 of the Revenue Act of 1934, 48 Stat. 729, 26 U.S.C.A.Int.Rev.Code,[1] and determined a deficiency in petitioner's income tax for 1935 in the sum of $1184.89. We have before us a petition to review a decision of the Board of Tax Appeals upholding the Commissioner.

The trust was created in 1930. Petitioner conveyed certain property to himself and another as co-trustee. Clause First provided:

"Until the death of my wife, Mary E. Fulham, the trustees shall accumulate the income of the trust fund. During my wife's life the trustees may pay to her at any time or from time to time any part or parts or the whole of the principal and/or accumulated income of the trust fund."

Clauses Second and Third contained detailed provisions, operative upon the death of Mary E. Fulham, for the payment of income, and eventually the principal, to the children of the grantor and their issue. Clause Fourth gave the trustees broad

---

[1] Section 166 of the Revenue Act of 1932, 47 Stat. 221, 26 U.S.C.A.Int.Rev. Acts, provided as follows:

"Revocable Trusts

"Where at any time [during the taxable year] the power to revest in the grantor title to any part of the corpus of the trust is vested—

"(1) in the grantor, either alone or in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, or

"(2) in any person not having a substantial adverse interest in the disposition of such part of the corpus or the income therefrom, then the income of such part of the trust [for such taxable year] shall be included in computing the net income of the grantor."

The amendment of this section by the Revenue Act of 1934 merely struck out the portions indicated in brackets above but otherwise made no change.

powers of management "as if they were the absolute owners free of all trust", specifically mentioning among others the power to invest and reinvest "irrespective of rules of law" and the power "to lend money to any person including any trustee or beneficiary with or without security". Clause Fifth set up a committee of three named persons having a joint power, exercisable in writing by any two of the committee, in terms as follows:

"A. To change, alter, and revoke any of the trusts herein set forth, and declare new trusts of the property in any way or manner, and to change, alter, and revoke any or all of the provisions of this instrument. No exercise of this power shall exhaust it. It may, however, be released, extinguished, or restricted by a like instrument so signed by any two of the Committee. Without qualifying or limiting the foregoing power in any particular, it shall include the power to alter the number of, the powers of, and the succession among the trustees, the power to remove trustees, the power to appoint successor trustees, the power to appoint additional trustees, and the power to alter the number of, the power of and the succession among the Committee, and to appoint additional members of the Committee and successor members of the Committee."

At this time revocable trusts were governed by Section 166 of the Revenue Act of 1928, 45 Stat. 840, 26 U.S.C.A.Int.Rev. Acts, which provided that the income was taxable to the grantor where the grantor had "at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself" title to the corpus of the trust. Here the grantor reserved to himself no formal power of revocation either alone or in conjunction with the members of the committee. Section 166 was amended in the Revenue Act of 1932[2] in order to block a possible means of tax avoidance by the device of vesting the power to revoke the trust in some person other than a beneficiary, whereby in fact the grantor may retain "substantially the same control as if he alone had power to revoke the trust". We set forth in the footnote a portion of the Committee report indicating the general purpose of the 1932 amendment.[3]

It is specifically conceded in the brief of the petitioner that the committee, in whom the power to revoke the trust was originally vested, did not have "a substantial adverse interest" in the disposition of the corpus or income therefrom, and we shall consider the case on the basis of that concession. Cf. Corning v. Commissioner, 6 Cir., 104 F.2d 329, 333. Consequently, if the provisions of the trust instrument had remained unaltered, the income from the entire corpus would have been taxable to the grantor under paragraph 2 of Section 166 of the Revenue Acts of 1932 and 1934.

However, shortly after the enactment of the 1932 amendment the designated committee executed an instrument amending Clause Fifth of the trust indenture by in-

---

[2] See the previous footnote.

[3] Report of the Senate Committee on Finance, Sen. Rep. No. 665, 72d Cong., 1st Sess., p. 34:

"Under the present law the income of a trust is taxable to the grantor where, at any time during the taxable year, the grantor has power to revest in himself title to any part of the corpus of the trust, either alone or in conjunction with any person not a beneficiary of the trust. In an attempt to avoid this section, the practice has been adopted by some grantors of reserving power to revest title to the trust corpus in conjunction with a beneficiary having a very minor interest or of conferring the power to revest upon a person other than a beneficiary; in such cases the grantor has substantially the same control as if he alone had power to revoke the trust. While it is, of course, yet to be established that such device accomplishes its purpose, it is considered expedient to make it clear that in any of these cases the income shall be taxed to the grantor. The House bill made the grantor of a trust taxable upon the income of any part of the corpus of the trust, where the power to revest in the grantor title to such part of the corpus was in the grantor alone or was in the grantor in conjunction with any person not having a substantial adverse interest in the disposition of such part of the corpus. Your committee has extended the scope of this provision so as to include, as well, the cases where the power to revest title to any part of the corpus is held, either alone or in conjunction with the grantor, by a person not having a substantial adverse interest in such part of the corpus or in the income therefrom."

See also House Rep. No. 708, 72d Cong., 1st Sess., p. 25, and House Conference Report No. 1492, 72d Cong., 1st Sess., p. 16.

serting the following at the end of paragraph A thereof:

"It is further provided, however, that the power created · in Paragraph A of Clause Fifth of the trust instrument shall not be exercised while Mary E. Fulham is living and competent to act in any manner so as to revest in the creator John N. Fulham any part or all of the corpus or income of the trust fund, unless the exercise of such power is consented to in writing by said Mary E. Fulham. · In so far as the Committee may have any power to alter, amend, or revoke the proviso contained in the last sentence, they hereby relinquish and extinguish such power."

By this amendment the power of the committee to revoke the trust and revest the corpus in the grantor became subject to the written consent of Mary E. Fulham. If Mrs. Fulham is found to be a person "not having a substantial adverse interest" in the disposition of the corpus or income therefrom, then the amendment has failed of its obvious purpose, and the income is taxable to the grantor under ·Section 166.

We think Mrs. Fulham does not have "a substantial adverse interest" within the meaning of the statute.

The evident policy of the Revenue Act is to tax the income to the grantor of a trust when he retains the substantial mastery over the corpus. Even though in form he lodges the power of revocation in someone other than himself, Section 166 is founded on the reasonable premise that the grantor still retains practical mastery, when this power is given to someone having no stake in the trust, or a stake so insubstantial that the holder of the power would not improbably be amenable to the grantor's wishes. This calls for a realistic appraisal.

On the face of the trust instrument, the main objective seems to be to accumulate the income during the life of Mrs. Fulham for the benefit of the children. True, it is ·provided that the trustees "may" make payments to Mrs. Fulham. On the strength of this, petitioner argues that "Mrs. Fulham is a beneficiary of the trust, to whom the trustee owes a duty of loyalty, and to whom the trustee is accountable in the event of arbitrary, unreasonable or dishonest action". Perhaps Mrs. Fulham has some interest, of a tenuous sort, cognizable in equity. Thus, a court of equity might, at her instance, enjoin the trustees from wasting the estate, her interest in its pres-

ervation being based on the theory that though the present trustees may not be disposed to give her anything, their successors might be. Again, if the trustees had exercised their judgment in favor of Mrs. Fulham and had decided to make a payment to her, they might be guilty of a breach of fiduciary obligation to her if they thereafter accepted a bribe from the remaindermen to withhold the payment. But no criterion is laid down for the guidance of the trustees, as in Corkery v. Dorsey, 1916, 223 Mass. 97, 111 N.E. 795, 796, relied on by petitioner, where the trustee was empowered to make payments to a designated beneficiary when in the judgment of the trustee the beneficiary "is deserving and in need of aid" in such sums as the trustee "may deem expedient or necessary" for the best interests of the beneficiary. Neither that case, nor Dumaine v. Dumaine, Mass., 1938, 16 N.E.2d 625, 118 A.L.R. 834, nor Boyden v. Stevens, 1934, 285 Mass. 176, 188 N.E. 741, also cited by petitioner, warrants the conclusion that under the trust instrument· here in question Mrs. Fulham might in any circumstances successfully invoke the aid of a court of equity to compel the trustees to exercise their discretion in her favor. It does not appear in the record that Mrs. Fulham has in fact been receiving any payments under Clause First. Furthermore, even if Mrs. Fulham might in necessitous circumstances appeal to a court of equity against the trustees (one of whom, by the way, is her husband, the grantor), for aught that appears in the record this may be so remote a contingency as to furnish no assurance that Mrs. Fulham would be likely to stand out against her husband's wishes in case he desired the corpus of the trust to be revested in himself. In this connection, the observations of the Supreme Court in Helvering v. Clifford, 308 U.S. ——, 60 S.Ct. 554, 84 L.Ed. ——, decided February 26, 1940, are pertinent, though made in reference to Section 22(a) of the Revenue Act, 26 U.S.C.A.Int.Rev. Acts. See also Rollins v. Helvering, 8 Cir., 92 F.2d 390, 393–395.

The insubstantial character of Mrs. Fulham's interest in the corpus of the trust is further evident from the fact that the committee could at any time by further amendment of the trust instrument destroy her interest, whatever it is, by taking away from the trustees the power to make payments to her. No such feature was present in Corning v. Commissioner, 6 Cir.,

104 F.2d 329. Moreover, that case, whether rightly decided or not, is not a contrary authority, for there the person having the veto power over revesting the corpus in the grantor had a more substantial interest than Mrs. Fulham here, and, according to the court, "in any event would receive the corpus if he survived the petitioner", the grantor.

In the case at bar, it having been concluded that Mrs. Fulham has not a substantial adverse interest, there is no doubt that the power vested in the committee, subject to her veto under Clause Fifth, as amended, is a power to revest title of the corpus in the grantor within the meaning of Section 166. Therefore, our decision in Higgins v. White, 1 Cir., 93 F.2d 357, 358, is not now relevant, because in that case the power which the trust deed vested in the grantor and his co-trustees to revest the corpus in the grantor if "the Trustees shall deem it wise so to do" was held to be a fiduciary power subject to the control of a court of equity, and not an absolute and unconditional power vested in the grantor either alone or in conjunction with the other trustees.

Upon appraisal of the trust instrument against a background of realities, we are convinced that this is a typical arrangement, falling within Section 166, where the grantor retains the controlling hand over something he has seemed to give away. In the view we take, it is unnecessary to consider alternative contentions of the Commissioner under Section 166 and Section 167 of the Revenue Act, 26 U.S.C. A.Int.Rev.Code §§ 166, 167.

The decision of the Board of Tax Appeals is affirmed.