1110

MAUD H. BUSH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8680.   Promulgated June 14, 1948.

*John W. Drye, Jr., Esq.*, for the petitioner.
*William F. Evans, Esq.*, for the respondent.

OPINION.

ARUNDELL, *Judge*: This case involves income tax deficiencies for the years 1938, 1939, and 1940 in the respective amounts of $13,913.53, $17,567.83, and $24,030.55, a total of $55,511.91.   The deficiencies result in the main from respondent's action in taxing to petitioner, as income, amounts, roughly speaking, of about $60,000 paid to her in each of the years by a trust established by her then husband on June 6, 1930. Petitioner here assails that action and pleads *res judicata*, based on an earlier decision of the Board of Tax Appeals, *Maud H. Bush*, 33 B. T. A. 628.

The facts have been stipulated and are adopted accordingly.   Those necessary to a decision of the case may be briefly summarized:

Petitioner filed her income tax returns for the periods in question with the collector of internal revenue for the second district of New York.

In 1930 petitioner's then husband, Irving T. Bush, instituted an action for divorce from her in the District Court for the County of Washoe, Nevada.   Petitioner interposed a counterclaim, asking that

she be granted a divorce. After the action had been instituted, but prior to the entry of the decree, an agreement dated June 6, 1930, was entered into by Irving T. Bush, the Bank of Manhattan Trust Co., as trustee, and the petitioner.

The agreement recited that Irving T. Bush had on January 15, 1923, set up a trust with R. Gould Simonds as trustee, under which petitioner was one of the beneficiaries; that Irving T. Bush had effectually revoked the trust of January 15, 1923;'that he had commenced the divorce action; that petitioner intended to contest and interpose a cross-complaint praying for a decree of divorce from him; and that it was their mutual intention that, if a divorce should be awarded to her, the agreement should constitute a complete adjustment and settlement of all rights of the petitioner in any of the property or estate of Irving T. Bush, and should be in lieu of any and all claims for dower, maintenance, support, or otherwise, which might arise in her favor against him. In that agreement the petitioner then acknowledged that the trust of January 15, 1923, had theretofore been effectually revoked and that she had disclaimed all right, title, or interest therein. The agreement further provided that Irving T. Bush irrevocably transferred and assigned certain securities to the trustee; that the trustee should collect the net income and pay over $60,000 thereof annually to the petitioner, less a deduction for one-half the trustee's compensation and expenses; and that any income in excess of $60,000 a year should be paid to Rufus T. Bush, son of the petitioner and Irving T. Bush. If the income of the trust in any year fell below $60,000, Irving was obligated to pay over to the trustee an amount sufficient to make up the deficiency. At petitioner's death, all the income was to be paid over to Rufus; and the trust contained further provisions, not here material, for the distribution of the corpus at Rufus' death.

The Nevada divorce court found that the trust agreement of June 9, 1930, was in all respects fair, just, reasonable, and equitable and was made for the sole and only purpose of settling and adjusting the respective property rights of the parties to the suit and in lieu of providing for the future support and maintenance of the wife. In its decree, the court, in lieu of any alimony and to provide for the future support and maintenance of the wife (petitioner here), adopted, approved, confirmed, and ratified the trust agreement of June 6, 1930, to the same extent and in all particulars as though it had been set forth in the decree *in haec verba.*

On March 5, 1934, the Commissioner sent the petitioner a deficiency notice in which he determined that there should be included in her taxable income for the year 1931 the $60,000 which she received from the trust of June 6, 1930. She thereupon filed a petition with the

United States Board of Tax Appeals; and in an opinion promulgated December 3, 1935, Docket No. 75889, reported at 33 B. T. A. 628, the Board held that, since the payments from the trust were received by the petitioner under an express agreement that they should settle her claims for dower, maintenance, and support, which was recognized by the divorce court's decree as in lieu of alimony, the payments were not taxable as income to the petitioner. On January 10, 1936, the Board entered its judgment pursuant to the foregoing opinion, ordering, adjudging, and deciding that there was no deficiency in income tax for 1931. That decision was not appealed by the Commissioner and became final in due course.

Pursuant to a power reserved in the trust agreement, Irving Bush appointed Colonial Trust Co. of New York as successor trustee on May 23, 1939. The trust agreement of June 6, 1930, has otherwise remained unchanged since 1930; and it was from the securities originally placed in that trust and reinvestments thereof by the trustee that the income was produced for the years 1938, 1939, and 1940 with respect to which the deficiencies now involved were determined.

On the foregoing facts, petitioner contends that the question of her liability for tax on the payments she received from the trust is *res judicata*. Respondent resists the plea in view of the following circumstances:

On March 28, 1939, the Commissioner sent the petitioner's former husband, Irving T. Bush, a deficiency notice in which he determined that the payments made out of trust income to petitioner during the years 1933, 1934, and 1935, should be included in Irving's income. Irving thereupon duly filed a petition with the Board of Tax Appeals, and the Board on November 6, 1941, rendered its decision sustaining the Commissioner's action. *Irving T. Bush*, 45 B. T. A. 609. Bush then appealed to the United States Circuit Court of Appeals for the Second Circuit, and that court, on March 15, 1943, reversed and remanded the case to this Court for further proceedings. *Bush* v. *Commissioner*, 133 Fed. (2d) 1005. This Court then held further proceedings in the case and entered its memorandum findings of fact and opinion on May 6, 1944, Docket No. 99364.

Irving Bush had set up the January 15, 1923, trust with R. Gould Simonds as trustee for the benefit of the petitioner and of Irving's two daughters by a former marriage, with 60 per cent of the net income during his life payable to the petitioner and 20 per cent to each of the two daughters; and upon his death the corpus was to be distributed 20 per cent to each of the daughters and 60 per cent to Rufus T. Bush, son of Irving and the petitioner here. That trust was at first revocable; but on May 3, 1923, Irving Bush renounced his right to revoke. The trust was subsequently revoked by mutual consent of the interested parties, as preliminary to the execution of the trust agreement of June

6, 1930. It was then the desire of the petitioner that a trustee be appointed who was less closely associated with her husband than was Simonds, and that a trust be established for her sole benefit. The corpus of the June 6, 1930, trust consisted of securities of a value of approximately $1,000,000, which had formerly constituted a little more than 60 per cent of the corpus of the January 15, 1923, trust.

The Board of Tax Appeals held in Irving Bush's case that he was taxable on the trust income paid to his wife under *Helvering* v. *Leonard*, 310 U. S. 80. The Court of Appeals for the Second Circuit took a different view and held that Irving Bush was not taxable on the trust income paid to his former wife under the principles of the *Leonard* case. It remanded the case to this Court, however, to "determine whether the 1923 trust came within the doctrine of the *Clifford*[1] case, as illuminated by the *Stuart*[2] case." This Court, upon remand, determined that question in the negative and, in accordance with the Circuit Court's opinion, held that Irving Bush was not taxable on the trust income in 1933, 1934, and 1935.

After the instant proceeding was submitted and original briefs were filed, the Supreme Court decided the case of *Commissioner* v. *Sunnen*, 333 U. S. 591. The parties were then requested to file supplemental briefs discussing the applicability of that case to the question of *res judicata* herein, which they have done. Prior to the Supreme Court's decision in that case, we should have thought there was considerable merit in the petitioner's plea. However, it seems to us that that case has drastically limited the scope of the doctrine of *res judicata* or collateral estoppel as applied in the field of tax litigation.

One of the cases relied upon here by the petitioner is *Commissioner* v. *Western Union Telegraph Co.*, 141 Fed. (2d) 774, but that case seemingly was disapproved by the Supreme Court in *Sunnen*. Petitioner also relies upon *Gillespie* v. *Commissioner*, 151 Fed. (2d) 903, and *Cory* v. *Commissioner*, 159 Fed. (2d) 391, for the proposition that the Commissioner is estopped to show facts and make arguments with respect to the 1923 trust, since the facts were either available to him or could have been ascertained by him at the time of the earlier proceeding; but we think the *Sunnen* case is against her on that proposition, too.

In the first *Maud H. Bush* case, on the factual predicate that a trust had been established by the petitioner's husband in connection with the divorce proceeding, which the divorce court adopted in its decree as in lieu of alimony, the point at issue was the legal question whether the petitioner was taxable on the income of that trust. No issue or point

---

[1] *Helvering* v. *Clifford*, 309 U. S. 331.
[2] *Helvering* v. *Stuart*, 317 U. S. 154.

was made or controverted as to whether that trust, so far as the petitioner is concerned, was substantially a continuation of the earlier 1923 trust or as to whether, in effect, her property was used to set up the 1930 trust. It is true that the Commissioner was put on notice as to the 1923 trust, and he could have raised such issues in the earlier proceeding. Unquestionably, notwithstanding the Commissioner's failure to do so, the earlier decision is *res judicata* of the petitioner's liability for tax in the year 1931. The Commissioner could not now go back and attempt to tax the trust income to petitioner for 1931, assuming the statute of limitations were not a bar, because, as to that claim, the prior decision is binding, not only as to every matter which was offered, but as to any other matter which might have been offered. *Cromwell* v. *County of Sac*, 94 U. S. 351; *Commissioner* v. *Sunnen, supra*. But that is not the question here. The cause of action in this case is different, involving claims or demands for taxes for different years. In these circumstances, as we read the *Sunnen* case, the Commissioner is now "free to litigate" the point with reference to the connection between the 1923 trust and the 1930 trust—a point not at issue in the earlier case—"even though such point might have been tendered and decided at that time."

It thus appears that the matter raised in this, the second proceeding, is not, in the language of the *Sunnen* case, "identical in *all* respects with that decided in the first proceeding." (Italics supplied.) We do not have here "the very same facts and no others." Accordingly, we hold that the petitioner's plea can not be sustained.

The facts now before us are substantially those which were before the Second Circuit Court of Appeals in *Bush* v. *Commissioner, supra*. That court took the view that, so far as the present petitioner is concerned, the 1930 trust was but a continuation of the 1923 trust; that, in effect, it was set up with her own property. It said:

The Tax Court held and the Commissioner contends that this case is governed by *Helvering* v. *Leonard*, 310 U. S. 80, because (so the argument runs) the doctrine of the *Leonard* case applies to any trust created by a husband for his wife, during the marriage, even if the trust remains unalterable after the divorce, if it is then supplemented by the husband's guarantee to maintain the trust income at a given level. With that sweeping generalization we cannot agree; in such a case, the situation is the same as if the wife, having independent means, were given a guarantee in connection with the divorce that the husband would make up any deficiency should the income from her own property fall below a stated amount. Nor can we agree with the Tax Court that the situation here is different merely because, in form, the 1923 trust agreement was *pro tanto* cancelled and the title to securities constituting the corpus of the 1930 trust was, for an instant, vested in the taxpayer who immediately caused them to be transferred to the new trustee; * * * the new agreement was, so far as Maud is concerned, but a continuation of the old one; * * * it was set up with her own property, and we think that the husband's guarantee of the trust income did not therefore make such income his.

That, it seems to us, is tantamount to a holding that Maud Bush is simply the income beneficiary of an ordinary trust, taxable in the same manner as any other beneficiary, and that the result is not changed by the fact that her husband, in connection with the divorce proceeding, guaranteed to maintain the trust income at a given level. Following the views of the Second Circuit, we hold that the petitioner is taxable on the trust income in 1938, 1939, and 1940, as the respondent has determined.

Reviewed by the Court.

*Decision will be entered for the respondent.*